UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

DANNY R. SCOTT                                                                                    PLAINTIFF

v.                                                                      CIVIL ACTION NO. 3:11CV-682-S

NORTON HEALTHCARE, INC.                                                                 DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the court on motion of the defendant, Norton Healthcare, Inc., to dismiss the amended complaint in this case for failure to state a claim upon which relief may be granted. F.R.Civ.P. 12(b)(6). In addressing such a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level,...on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *NicSand, Inc. v. 3M Co.,* 507 F.3d 442, 461 (6th Cir. 2007)(*quoting Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)). The court may consider all documents attached to the complaint. *See* Fed.R.Civ.P. 10(c). However, the court need not accept as true unwarranted factual inferences or legal conclusions. *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), *quoting Bell Atlantic Corp.*, 550 U.S. at 570.

Stated concisely, Norton Healthcare contends that the claim of the plaintiff, Danny R. Scott, for wrongful denial of "top hat" ERISA plan benefits is precluded by his settlement of a state court action brought against him by Norton Enterprises, Inc., an affiliate of Norton Healthcare. The underlying facts for purposes of the resolution of this motion are undisputed.

This is an action for wrongful denial of benefits under an employee benefit plan, pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. Scott was the Chief Administrative Officer of Norton Cancer Institute ("NCI"), an affiliate of Norton Healthcare, from 2000 to December 31, 2008. During this period, he was offered, and elected to participate in, Norton Healthcare's ExecuPlus Capital Accumulation Plan. Norton Healthcare "sponsors the Plan to provide key employees with supplemental deferred compensation as well as the opportunity to defer compensation...to encourage continued employment with the Company for a significant period of time." ExecuPlus Plan, Art. I, sec. 1.2. Norton Healthcare made contributions of $29,600 in 2007 and $33,600 in 2008 for Scott's benefit. Am.Compl., ¶ 9. Scott elected to have his benefits paid to him twenty-four months after the date of his separation from his employment, under the condition that he refrain from competing with Norton Healthcare during that 24-month period. Am.Compl., ¶ 10.

In April 2008, Scott announced his intention to retire from his position at NCI at the end of 2008. Scott was offered to "transition" from a full-time employee of Norton Healthcare to a part-time employee of Norton Enterprises, effective January 1, 2009. He was informed by letter that he would "continue to receive [his] current salary and benefits through December 31, 2008 including participation in the Norton Healthcare Management Incentive Program. [the "top hat" plan]. For the [19] month period for [his] part-time role beginning January 1, 2009, [he would] be eligible to receive salary and benefits outlined in the attached agreement which is reflective of a part-time employee of Norton Enterprises..." Am.Compl., ¶ 13; Ex. D; Ex. E. Scott entered into the employment agreement with Norton Enterprises on July 21, 2008. The last deferred compensation payment was made on his behalf by Norton Healthcare on January 1, 2009. Am.Compl., ¶ 18.

Scott's employment with Norton Healthcare ended on December 31, 2008. A dispute developed in 2009 over Scott's interest in a management position with Iasis Group, Inc., an entity that allegedly competes with Norton Enterprises. The details of this dispute are immaterial to the resolution of the pending motion. Suffice it to say that Norton Enterprises became concerned about Scott's activities and sued Scott in March, 2009 in the Jefferson County, Kentucky, Circuit Court to restrain him from engaging in competing activity and using proprietary or confidential information. Norton Enterprises alleged breach of Scott's employment agreement, unfair competition, and breach of fiduciary duties he owed to Norton Enterprises. Am.Compl., Ex. H.

On May 7, 2009, Scott entered into a settlement of the state court action with Norton Enterprises. The settlement stated, in part, that:

> Norton [Enterprises] voluntarily terminates [Scott]'s employment with Norton [Enterprises], pursuant to Section 4.4 of the employment agreement executed by the parties on July 21, 2008... Norton [Enterprises] shall pay [Scott] his accrued salary, at the current effective rate through the effective date of termination, plus any other benefits to which [Scott] currently has a vested right, including any deferred compensation accrued through December 31, 2008, and payment for any additional work performed by [Scott] during January and February 2009, supported by proper documentation, upon review and approval of same by Norton [Enterprises].

Am.Comp. Ex. I. The settlement, among other things, restrained Scott (1) from entering into a contract of employment with certain enumerated entities for a period of 18 months, (2) from employing or contracting with anyone who is or was an employee of Norton Enterprises or an affiliated company for a period of 18 months, and (3) from using, disclosing or destroying confidential or proprietary information which belongs to Norton Enterprises or an affiliated company. *Id.*

In 2011, Scott sought payment of deferred compensation for 2007 and 2008. His claim for benefits was denied, and his appeal of the decision was finally denied in 2012. He filed suit against defendant Norton Healthcare for wrongful denial of benefits. Norton Healthcare has moved to dismiss Scott's amended complaint on the ground that "[t]he terms of the Agreed Judgment preempt the terms of the Plan as a subsequent bilateral and mutual agreement between Norton [Enterprises] and Scott and are thus, controlling in this action. As a result, Scott has failed to plead facts stating a claim upon which relief can be granted." Mo. to Dis., DN 17-1, p. 6. In a footnote, Norton Healthcare states that "The Agreed Judgment foreclosed application of the twenty-four month period, because it terminated Scott's entitlement to any benefits that had not yet vested." DN 17-1, p. 7, fn. 5. Norton Healthcare explains that "[because top hat plans are excluded from the vesting and non-forfeitability requirements of ERISA under U.S.C. § 1051(a), a party can, through subsequent agreement, forego or forfeit benefits under a plan in certain circumstances. This case presents such a situation." DN 17-1, p. 7.

The crux of the matter is that Norton Healthcare seeks dismissal of this action based on a settlement agreement to which it was not a party. The question to be addressed is whether, in spite of this fact, Norton Healthcare can establish that the settlement precludes Scott's claim for deferred compensation benefits under the Plan.

Despite its attempts to finesse the facts, the documents upon which Norton Healthcare relies evidence that Scott worked for Norton Healthcare through December 31, 2008 and then was employed as a "part-time general manager"[1] for Norton Enterprises from January 1, 2009 until his termination on May 7, 2009. Norton Healthcare and Norton Enterprises are affiliated but separate

---

[1] Verified Compl., Jefferson Circuit Court, DN 16-8, p. 1.

and distinct entities. Norton Healthcare recites preamble language from Scott's employment contract with Norton Enterprises that "Norton Healthcare, Inc. and [Scott] desire to continue [Scott]'s employment...." This provision, in its entirety, reveals, however, that the parties desired to "continue [Scott]'s employment on a part-time basis in a different capacity and through an affiliated corporation." We thus reject Norton Healthcare's argument that this preamble language establishes that Scott's employment with Norton Enterprises "constituted a continuation of his employment and relationship with Norton [Healthcare], especially for purposes of the Plan..." Reply, DN 21, p. 2. This argument draws unwarranted conclusions from select portions of the document. Further, in the letter offer of "transition," Norton Healthcare made it quite clear that Scott would be employed by a different entity as of January 1, 2009, indicating that he would "transition from your Norton Healthcare, Inc. employment, as a full-time employee, to a part-time employee of Norton Enterprises, Inc. effective January 1, 2009." DN 16, Ex. D. The court has been shown no evidence that Scott continued his employment relationship with Norton Healthcare after December 31, 2008. To the contrary. The evidence indicates that Scott ended his employment with Norton Healthcare on December 31, 2008 and began employment with Norton Enterprises on January 1, 2009.

Norton Healthcare argues that the settlement document is replete with references to Norton Enterprises' "affiliates," evidencing that the settlement intended to bind Norton Healthcare and forfeit Scott's benefits accrued during his employment with Norton Healthcare. However, the only references to "affiliates" in the settlement agreement appear in two paragraphs enjoining Scott from certain conduct. The agreement precludes Scott from soliciting employees of Norton Enterprises or its affiliates for a period of eighteen months, or using or disclosing proprietary or confidential

information belonging to Norton Enterprises or its affiliates. Scott agreed to these restrictions in the employment agreement also. These terms referencing Norton Enterprises' affiliates in no way bind Norton Healthcare to any obligations in the agreement. The provisions concerning Scott's termination and payment make reference Norton Enterprises only. Additionally, the settlement agreement begins with the statement that "Norton Enterprises...and...Scott...having agreed to entry of this Agreed Final Judgment..." Norton Healthcare was not a party to the suit nor to the settlement agreement.

In a newly minted argument in its reply brief (DN 21), Norton Healthcare refers to Section 11.3 of the Plan which states, in part, with reference to transfers[2] of employment to an affiliate, that "the Participant's entitlement to benefits under the Plan shall be determined as if the Participant's employment with the Affiliate were employment with the Company." It urges that, in light of this language, any effect on Scott's employment with Norton Enterprises, such as the settlement of the lawsuit, could affect his right to deferred benefits accrued during his employment with Norton Healthcare. This argument appears to address the merits of Scott's claim for benefits under the Plan, rather than the question of the preclusive effect of the settlement agreement on Scott's claim. As such, the argument is premature.

Finally, Norton Healthcare argues that if the court finds that the settlement agreement does not preclude Scott's claim, the language referring to "deferred compensation accrued through December 31, 2008" would be rendered meaningless. Norton Healthcare contends that this clear reference to Scott's benefits accrued while employed by Norton Healthcare evidences the parties' intention to settle the issue of Scott's deferred compensation in conjunction with his termination.

---

[2]We do not address whether "transitions" are "transfers" under the Plan.

This statement may be true, but it begs the question of who agreed to and who is bound by these terms. On this point, we are left with the argument that Norton Healthcare should be bound by Norton Enterprises' settlement with Scott, but the evidence fails to establish that it is so bound. It appears to the court that the only way this might be possible would be if the Plan affords this treatment in determining Scott's entitlement to benefits, as alluded to by Norton healthcare in regard to Section 11.3 of the Plan.

In sum, the court concludes that, ultimately, "all roads may lead to Rome." That is, Scott's entitlement to benefits may be affected by matters in his employment with Norton Enterprises, under the terms of the Plan. However, this is a merits determination which we leave for another day.[3] Norton Healthcare's various arguments that the settlement between Norton Enterprises and Scott supplanted and precluded any claim for benefits under the Plan are without merit and are therefore rejected.

Motion having been made and for the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendant, Norton Healthcare, Inc, to dismiss the amended complaint (DN 17) is **DENIED.**

**IT IS SO ORDERED.**

July 31, 2013

**Charles R. Simpson III, Senior Judge**
**United States District Court**

---

[3] In any event, the issue is not fully briefed, as this new argument was raised for the first time in the reply brief.